UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-CV-76-JRW-CHL

**ROSE M. SIMPSON,**                                                                          **Plaintiff,**

v.

**XEROX EDUCATION SERVICES, LLC, et al.,**                        **Defendants.**

## MEMORANDUM OPINION AND ORDER

Before the Court is the Motion to Amend Complaint & Request for Additional Assistance filed by Plaintiff, Rose M. Simpson ("Simpson").[1] (DNs 63, 71.) Defendants, Conduent Education Services, LLC ("CES"), f/k/a Xerox Education Services, LLC ("Xerox"), d/b/a/ ACS Education Services ("ACS"), and Conduent, Inc. ("Conduent") (collectively "Defendants"), filed responses (DNs 74, 77), and Simpson filed replies (DNs 75, 78).[2] Therefore this matter is ripe for review.

For the reasons set forth below, Simpson's Motion to Amend Complaint & Request for Additional Assistance (DNs 63, 71) is **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Simpson filed her motion twice at DNs 63 and 71. The only difference between the two filings is that Simpson attached a redacted copy of the exhibit to her original motion (DN 71-1) and an additional exhibit (DN 71-2) to her second motion (DN 71). Because the two motions are identical, for the purpose of this Opinion, the Court will cite only to DN 63 but will consider the additional exhibit attached at DN 71-2.

[2] Though Defendants admitted in their second response that that Simpson's motion at DN 71 appeared to be an exact duplicate of the one filed at DN 63, Defendants still filed a second, eight-page response. (DN 77.) Because Defendants' initial response was only fifteen pages, the Court will still consider Defendants' second response because Defendants did not submit in total more than the twenty-five pages permitted by LR 7.1(d) for responses. Simpson's combined replies total nineteen pages, more than the fifteen pages permitted for replies by LR 7.1(d). Because Defendants raised new arguments in their second response (DN 77) that were not raised in their initial response (DN 74), the Court finds it appropriate to consider Simpson's second reply. However, the Court cautions both Parties to refrain from filing duplicative motions, responses, and replies in the future and to carefully adhere to all Local Rules, including those regarding page limits.

## I. BACKGROUND

### A. Factual and Procedural Background

Simpson filed the instant action on February 8, 2017. (DN 1.) Though her initial Complaint contained no legal causes of action, in it, she generally alleged that the then sole-Defendant, Xerox was attempting to collect student loan debt that she consolidated in 2002 and paid in full in 2005. (*Id.* at PageID # 5.) She likewise alleged that her signatures were forged on promissory notes from 2005 and 2006. (*Id.*) She also stated in support that "in 2015 [Xerox d/b/a ACS] . . . was investigated for miscalculating payments and overcharging some borrowers and this goes back as far as 2006." (*Id.*) As to the damages being sought, Simpson listed, among other items, "the inability to find employment due to [Xerox d/b/a ACS] incorrectly reporting to 3 credit bureaus on [her] credit reports." (*Id.* at PageID # 7.) On August 24, 2017, Defendants filed a Motion to Dismiss Simpson's Complaint. (DN 13.) While the Court granted the same, it permitted Simpson to file an amended complaint specifying what claims she was asserting against what entities. (DN 18.)

In her Amended Complaint, filed on October 16, 2017, Simpson asserted causes of action under the Consumer Financial Protection Act of 2010 ("CFPA"), 12 U.S.C. § 5511, *et seq.*; the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*; and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, against both CES and Conduent based generally on the Defendants' "unlawful acts and practices in connection with Defendants' servicing and collection of student loans." (DN 21.) Simpson asserted that there were inconsistencies in the amount she allegedly owed pursuant to the loan at issue and that Defendants "misreported information to consumer reporting agencies by stating that [Simpson] had defaulted . . . ." (*Id.* at PageID # 74-75.) She alleged that "ACS was under investigation for miscalculating

payments and overcharging borrowers which [*sic*] goes back as far as 2005." (*Id.* at 75.) She also reiterated her claim that she paid off her loan in 2005. (*Id.* at 77.) Defendants filed a second Motion to Dismiss. (DN 23.) In a December 19, 2017, Memorandum Opinion and Order, the Court granted in part and denied in part that motion, dismissing Simpson's claims under the CFPA and FCRA but permitting her claim under the FDCPA, 15 U.S.C. § 1692(e)(10), to proceed. (DN 32.)

On December 22, 2017, Simpson filed a Motion to Amend her Complaint. (DN 33.) Simpson requested permission to reassert a claim under the FCRA, 15 U.S.C. § 1681s-2, based on Defendants' failure to conduct a reasonable investigation into the dispute she filed with two consumer reporting agencies to which Defendants reported her debt. (*Id.*) Simpson also requested permission to reassert a claim under the FDCPA, 15 U.S.C. §1692g. (*Id.*) The undersigned recommended that the Court grant Simpson's Motion to Amend, and the Court did so on July 12, 2018.[3] (DN 38.) In her Amended Complaint (DN 39), Simpson alleged that there were continuing violations of the FCRA and FDCPA that overrode the statute of limitations because her debt was transferred to Education Credit Management Corporation ("ECMC") and to Navient. (DN 39.) She also asserted that the "Defendants have continuously given misinformation to credit reporting agencies, ECMC, and Navient." (*Id.* at 182.) She stated that "Defendant's negligence . . . [led] to the alleged loan being transferred twice, continuously giving misinformation to these companies, continuously misreporting to the credit reporting agencies and continuously being unwilling to fully investigate this matter since 2005." (*Id.* at 184.) Defendants filed a third Motion to Dismiss. (DN 41.) In its October 22, 2018, Memorandum Opinion and Order, the Court granted in part and

---

[3] The undersigned issued a report and recommendation because Defendants opposed Simpson's request to amend on grounds that amendment would be futile because her claims were time-barred. (DN 35.)

3

denied in part Defendants' Motion. (DN 46.) The Court dismissed Simpson's FDCPA claim pursuant to 15 U.S.C § 1692g but permitted her remaining claims to proceed.

Defendants then filed a Motion to Close the Pleadings (DN 47), which the Court granted (DN 50). The Court entered an Order for Meeting and Report setting an in-person scheduling conference before the undersigned for January 9, 2019, and directing the Parties to file a proposed discovery plan. (DN 51.) The Parties filed separate proposed discovery plans on December 13, 2018. (DNs 52, 53.) In her proposed plan, Simpson indicated that "[t]he parties do not need any additional time for amendment of pleadings and request that the amendment of pleadings deadline be closed." (DN 53, at PageID # 256.) Defendants' plan contained identical language. (DN 52, at PageID # 252.) After the scheduling conference, the Court entered a scheduling order in which—despite the Parties not having requested the same—it set a deadline of March 1, 2019, for any motion to join additional parties or to amend pleadings. (DN 54.)

Defendants took Simpson's deposition on May 30, 2019. (DN 77-2.) The court reporter sent Simpson an electronic copy of her deposition transcript on June 12, 2019, and indicated in a letter dated the same day that the errata sheet would need to be returned within thirty days. (DNs 77-4, 77-7.) Thereafter, Simpson requested a hard copy, which the court reporter mailed to her on June 17, 2019. (DN 77-7.) On both June 21, 2019, and July 10, 2019, Simpson e-mailed Defendants' counsel to indicate that she did not receive the hard copy of the transcript until June 18, 2019, and would therefore, return the errata sheet by July 18, 2019. (DN 63, at PageID # 334; DNs 77-5, 77-6.) Defendants did not respond to those e-mails, indicating in their response that the e-mails "did not appear to be requesting an extension, and based on her description, there seemed to be no issue with the 30-day calculation." (DN 77, at PageID # 952.) Defendants represented that they did not know at the time of Simpson's e-mails that she received an earlier

copy electronically. (*Id.*) While Simpson stated she had planned to mail the errata sheet on July 12, 2019, her grandmother passed away unexpectedly that date preventing her from doing so. (DN 63, at PageID # 335.) The court reporter received Simpson's errata sheet in the mail on July 16, 2019. (DN 77-7.) The nine-page errata sheet requested a number of changes because Simpson "did not hear the question correctly," listed several items as typographical errors, and asserted multiple objections based upon needing to clarify an answer and/or add an objection not asserted during the deposition. (DN 77-3.) Simpson also attempted to object to thirty-six pages of deposition testimony stating as her proposed change, "I object to these questions," and as a reason that she "was not given [a] document prior to the deposition, and [she] was not allowed to verify if th[e] document was [her] bankruptcy petition." (*Id.* at PageID # 1169.)

### B. The Instant Motions

Simpson filed the instant Motion to Amend and for Additional Assistance related to the errata sheet on July 26, 2019, (DN 63), and again on August 8, 2019, (DN 71). Therein, Simpson requested leave to amend her Complaint to add a fraud claim and three additional causes of action under the FDCPA. (DN 63.) As to the fraud claim, Simpson indicated that she believed initially when she filed this lawsuit that a third party had forged her signature on the 2005 and 2006 promissory notes but stated that after completing discovery, she now possessed "a plethora of evidence" to prove Defendants forged her signatures. (*Id.* at PageID # 333.) She claimed the evidence came from review of Defendants' discovery responses, document production, and the existence of other lawsuits regarding Defendants' alleged student loan servicing misconduct. (*Id.*) She requested leave to add several claims under various subsections of the FDCPA, 15 U.S.C. § 1692e. (*Id.*) As to her claim under 15 U.S.C. § 1692e(2)(A), Simpson alleged that the Defendants falsely represented the character and amount of her debt based on erroneous manual adjustments

to the principal balance of her loan as demonstrated on the borrower history and activity report Defendants produced. (*Id.*) She alleged that Defendants falsely represented the character and amount of her debt to "numerous [third] parties including the credit reporting agencies, ECMC, [and] Navient." (*Id.*) As to her claim under 15 U.S.C. § 1692e(8), she alleged that Defendants "lied and knowingly communicated false and erroneous information regarding the alleged 2005 and 2006 loans to numerous [third] parties including the credit reporting agencies, ECMC, [and] Navient." (*Id.* at 334.) Finally, as to her claim under 15 U.S.C. § 1692e(14), she alleged that Defendants failed to use the true name of their businesses when reporting information to the credit reporting agencies. (*Id.*)

Defendants argued in response that Simpson should not be permitted to file another amended complaint in this lawsuit and that Simpson had not shown good cause for requesting to do so past the Court's March 1, 2019, deadline to amend pleadings. (DN 74.) Defendants argued that given that fact discovery had closed, Defendants were preparing summary judgment motions, and a settlement conference was imminent, the addition of new legal theories at this stage of the case would significantly prejudice them. (*Id.* at PageID # 570, 578-79.) Defendant stated that Simpson had already been given multiple opportunities to amend her complaint and did not establish her diligence in attempting to meet the case management order's requirements in her instant motion. (*Id.* at 576-77.) Specifically, the Defendants noted that despite references to a "plethora" of "new evidence" in her motion, she did not identify any such new evidence in her motion with specificity. (*Id.* at 578.) Finally, Defendants made a number of arguments as to why the new claims Simpson sought leave to assert were futile. (*Id.* at 579-82.)

In her replies, Simpson reiterated that the new evidence she believed gave rise to her claims came from Defendants' discovery responses, document production, and additional lawsuits

regarding Defendants' conduct. (DN 75.) She argued that good cause existed to permit her amendment based on "new information that was unavailable by the amended pleadings deadline of March 1, 2019." (*Id.* at PageID # 808.) She emphasized in her replies that "there [we]re numerous discrepancies, errors and lies in the documents Defendants submitted during discovery, and in their answers to the Interrogatories that clearly support[ed] [her] new claims." (DN 78, at PageID # 1185.)

Simpson also requested that changes be made to her deposition transcript. (DN 63, at PageID # 334.) She indicated that she has hearing problems and did not hear some questions correctly. While she admitted that she sent her errata sheet to the court reporter four days after the deadline advocated by the court reporter and Defendants, she indicated that the court reporter and Defendants' counsel failed to respond to her e-mails about the time frame and that she experienced a family emergency justifying the delay. (*Id.*) Further, she argued that substantive changes to her deposition transcript were proper pursuant to Ky. R. Civ. P. 30.05. (*Id.* at 335.) In response, Defendants argued that Simpson's requested changes were both untimely and improper under federal law. (DN 77.)

## II. DISCUSSION

### A. Motion to Amend

#### 1. Legal Standard

The Sixth Circuit has held that in considering a request to amend a complaint past the deadline set for amending pleadings, "a plaintiff must first show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003).

In evaluating whether a party has shown "good cause" within the meaning of Fed. R. Civ. P. 16(b), the primary consideration is "the moving party's diligence in attempting to meet the case management order's requirements." *Inge v. Rock Fin. Corp.*, 281 F.3d 613, 625 (6th Cir. 2002) (quoting *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001)); s*ee also* Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendments ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). Additionally, a court must consider whether modification of the scheduling order will prejudice the opposing party. *Leary*, 349 F.3d at 906.

As to whether the amendment is proper, Fed. R. Civ. P. 15 provides that [t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a Court may appropriately deny leave to amend based on "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc."[4] *Foman v. Davis*, 371 U.S. 178, 182 (1962).

---

[4] The Sixth Circuit has not directly spoken as to whether a magistrate judge has authority to deny a motion for leave to amend on the basis of futility. *See, e.g.*, *Gibbs v. Norfolk S. Ry. Co.*, No. 3:14-cv-587-DJH, 2015 WL 4273208, at *2 (W.D. Ky. July 14, 2015). There is likewise a split of opinion among the district courts within the Sixth Circuit on this issue. *Compare Hira v. New York Life Ins. Co.*, No. 3:12-cv-363, 2014 WL 2177799, at *1 (E.D. Tenn. May 23, 2014) ("Magistrates do decide motions to amend involving the issue of futility, and the decision is considered nondispositive."), *with Durthaler v. Accounts Receivable Mgmt., Inc.*, No. 2:10-cv-1068, 2011 WL 5008552, at *4 (S.D. Ohio Oct. 20, 2011) ("There is some conceptual difficulty presented when the primary basis for a party's opposition to the filing of an amended pleading is that the pleading is futile, *i.e.* that it fails to state a claim upon which relief can be granted. A Magistrate Judge cannot ordinarily rule on a motion to dismiss, *see* 28 U.S.C. § 636(b)(1)(A), and denying a motion for leave to amend on grounds that the proposed new claim is legally insufficient is, at least indirectly, a ruling on the merits of that claim."). However, here, because the undersigned finds that Simpson has not shown good cause for her request to amend after the deadline for doing so set in the Court's scheduling order expired, the undersigned does not reach Defendants' futility argument. Accordingly, the undersigned concludes that the instant motion to amend is a "pretrial matter not dispositive of a claim or defense" within the meaning of Fed. R. Civ. P. 72(a) that the undersigned has jurisdiction to hear and determine pursuant to the Court's referral (DN 5) and 28 U.S.C. § 636(b)(1)(A). Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A) (2018).

### 2. Analysis

The Court finds that Simpson has not shown good cause for her failure to seek leave to amend past the deadline for doing so. Despite arguing that the claims she sought leave to assert are based on new evidence, she failed to specifically identify or attach any such new evidence to her motion and subsequent filings. Instead, to her first motion, she attached only a twenty-six page summary document she typed listing the "Lies, Errors & Discrepancies" she identified in Defendants' discovery responses. (DN 63-1.) While she did attach Defendants' responses to her first set of discovery requests to her second motion, she did not specifically identify which responses purported to provide the new information on which her new claims were based. (DN 71-2.) Even in comparing the two documents, the Court cannot glean on what specific new evidence Simpson is relying. Instead, her typed summary appears to mainly consist of her allegations regarding conversations she had with Defendants' representatives and citations to news articles she claimed support her view of Defendants' actions. (DN 63-1.) A summary of her conversations with Defendants' representatives does not constitute new evidence provided by Defendants because the same was within Simpson's possession before Defendants' discovery responses were served. Additionally, without more, the news articles she cited to regarding the existence of Defendants' various settlements with the Consumer Financial Protection Bureau ("CFPB") and other entities do not serve to establish a basis to allege any misconduct by Defendants *as to Simpson* in this case. Though Simpson's typewritten summary specifically referenced several documents by name (e.g. Borrower History and Activity Report, Client/Audit Review Report, Express Pay/Payphone Authorization Report, etc.), she did not attach the documents themselves to enable the Court to review or assess her allegations with regard to those

documents.[5] (*Id.* at PageID # 348-57.) She also attached another typed summary to her first reply entitled "NSLDS Discrepancies" but did not attach all the documents referenced therein or make clear to which of the documents she did attach that she was referring. (DNs 75-1, 75-2, 75-3, 75-4, 75-5, 75-6.) Without the "new evidence" on which Simpson argued she was basing her new claims, the Court cannot accept that there is any truly new evidence.

Simpson also failed to specify when she received any new evidence. As indicated above, "good cause" is defined by diligence in attempting to meet the deadlines in the scheduling order. *Inge*, 281 F.3d at 625. When Simpson received the "new evidence" on which she argued her new claims are based is extremely relevant to determining whether she exercised diligence in attempting to meet the deadlines set by the Court. *See Innovation Ventures, LLC v. Custom Nutrition Labs., LLC*, No. 12-13850, 2016 WL 9712013, at * 2 (E.D. Mich. Jan. 25, 2016) ("If new evidence is the basis for amending the complaint, there is no good cause where the plaintiff delays in seeking the amendment after it becomes aware of the new evidence."). The deadline to amend pleadings expired on March 1, 2019, and the fact discovery deadline first expired on June 7, 2019, before being extended by the Court to August 6, 2019, at the request of Defendants over Simpson's objection. (DNs 54, 60.) Simpson did not file her motion to amend the first time until July 26, 2019, and then filed it again on August 8, 2019, after the expiration of the extended discovery deadline. (DNs 63, 71.) Without an understanding of when Simpson received the evidence on which she purported to rely, the Court cannot assess whether Simpson really was diligent in attempting to meet the case schedule. Even though Simpson made no representation regarding when she received the evidence, the Court notes that the Certificate of Service on

---

[5] Simpson stated in her first reply that Defendants attached the Borrower History and Activity Report as Exhibit 2 to their response. (DN 75, at PageID # 812.) However, Exhibit 2 to Defendants' response (DN 74) consisted of excerpts from Simpson's deposition (DN 74-2), and no other document Defendants attached to their response is titled "Borrower History and Activity Report."

Defendants' discovery responses indicated they were served on May 20, 2019. (DN 71-2, at PageID # 471.) Assuming the "new evidence" referenced by Simpson was provided on that date—and not as part of Defendants' initial disclosures or at some earlier date—Simpson's motion still does not explain the delay between May 20, 2019, and the filing of her motion (DN 63) on July 26, 2019, a delay of approximately sixty-seven days. Simpson likewise included no representation regarding the number of documents provided so as to explain why it would have taken that length of time to review the same and prepare her motion. Simpson merely stated in passing that she has spent nearly "1,000 agonizing documented hours" since 2011 "trying to prove [that she] paid [her] 2002 consolidation loan in full in June 2005 and that the forged 2005 and 2006 consolidated student loans are not [hers]." (DN 75-4, at PageID # 928.) But because this lawsuit was only filed in February 2017, this representation gives the Court no basis to conclude how long or when Simpson spent time reviewing the documents she received in relation to the date she filed her motion for leave to amend.

Finally, without the documentation referenced above, the Court is unconvinced by her instant filings that Simpson's claims are actually based upon new evidence because her current allegations overlap significantly with those she previously made. For example, as to her fraud claim, she alleged in her instant motion that she initially thought a third party had forged her signature on the 2005 and 2006 promissory notes and that she now has evidence that Defendants forged her signatures. (DN 63, at PageID # 333.) However she has repeatedly alleged that her signatures were forged on the promissory notes since her initial complaint. (DN 1, at PageID # 5.) CES pointed out in its first motion to dismiss that Simpson didn't allege that CES or anyone associated with CES forged her signature (DN 7, at PageID # 35), and Simpson stated in response that "the fraud *committed by the Defendant* was secondary" to another issue regarding her loan,

11

implying that she believed Defendants to have forged her signatures. (DN 17, at PageID # 62 (emphasis added).) Further, in a November 7, 2017, filing, Simpson stated that she "did not have physical proof that [her] signature was forged on the 2006 promissory note until November 2014" (DN 26, at PageID # 108), but in her reply in support of her motion she stated that Defendants forged her signature in December 2014. (DN 75, at PageID # 814.) Both statements cannot be true. These allegations related to the forgery suggest that, in any event, Simpson was aware of a potential fraud claim long because the March 1, 2019, discovery deadline. As to her FDCPA claims, Simpson has repeatedly contended in her prior filings that the Defendants submitted incorrect information to third parties. (*See, e.g.*, DN 1, at PageID # 7 ("[ACS] incorrectly reporting to 3 credit bureaus on my credit reports"); DN 21, at PageID # 74 ("Defendants also misreported information to consumer reporting agencies . . . ."); DN 28, at PageID # 122 ("I am currently dealing with the ramifications of the Defendant's . . . incorrect reporting to the credit reporting agencies . . ."); DN 39, at PageID # 183 ("Defendants have continuously given misinformation to credit reporting agencies, ECMC and Navient").) Simpson also previously made allegations regarding Defendants' settlements with other organizations for "miscalculating payments and overcharging borrowers . . ." (DN 21, at PageID # 75.) As the Sixth Circuit has explained, "[a] plaintiff does not establish 'good cause' to modify a case schedule to extend the deadline to amend the pleadings where she was aware of the facts underlying the proposed amendment to her pleading but failed, without explanation, to move to amend the complaint before the deadline." *Ross v. Am. Red Cross*, 567 F. App'x 296, 306 (6th Cir. 2014). For these reasons, without documentation to support that the specific claims she sought leave to add in the instant motion are based on new evidence, the Court cannot conclude that Simpson diligently sought to meet the Court's deadlines.

The Court also notes that this would be Simpson's Third Amended Complaint and the fourth version of her Complaint filed in this action. All three prior complaints were followed by a motion to dismiss requiring briefing by the Parties and a decision by the Court. "[A]lthough courts 'must give a party a fair chance to present claims and defenses, [the court] must also protect a busy district court [from being] imposed upon by the presentation of theories seriatim.' " *Anderson v. Kentucky One Health, Inc.*, No. 3:17-cv-359-TBR, 2017 WL 6347966, at *2 (W.D. Ky. Dec. 12, 2017) (quoting *Daves v. Payless Cashways, Inc.*, 661 F.2d 1022, 1025 (5th Cir. 1981)). As Simpson has been given ample previous opportunities to amend her Complaint and has not supported her claim that her current allegations are based on new evidence, the Court concludes she has not shown good cause.

Even assuming Simpson had been able to show good cause, Defendants would be significantly prejudiced here. As Defendants indicated, fact discovery in this case has concluded, and the Court would be forced to reopen it if Simpson added new allegations to her Complaint. Further, this case is ready to proceed to a settlement conference and dispositive motions, both of which would likely be further postponed in the case of an amendment.

For all these reasons, the Court will deny Simpson's request for leave to amend. Because the Court concludes that Simpson did not show good cause for her untimely request, the Court does not reach the question of whether Simpson's proposed amended claims are futile.

**B.  Errata Sheets**

**1.  Legal Standard**

Fed. R. Civ. P. 30(e)(1) provides that

(1) Review; Statement of Changes. On request by the deponent or a party before the deposition is completed, the deponent must be allowed 30 days after being notified by the officer that the transcript or recording is available in which:
(A) to review the transcript or recording; and

> (B) if there are changes in form or substance, to sign a statement listing the changes and the reasons for making them."

Fed. R. Civ. P. 30(e)(1). The Rule does not define what it means by "changes in form or substance." However, in *Trout v. FirstEnergy Generation Corp.*, 339 F. App'x 560 (6th Cir. 2009), the Sixth Circuit suggested that Rule 30(e)(1) does not allow a deponent to change his or her testimony under oath. The Sixth Circuit explained, ""Rule 30(e) does not allow one to alter what was said under oath. If that were the case, one could merely answer the questions with no thought at all[ ], then return home and plan artful responses. . . . A deposition is not a take home examination." *Id.* (citations omitted) (quoting *Tuttle v. Tyco Elecs. Installation Servs., Inc.*, No. 2:06-cv-581, 2008 WL 343178, at *4 (S.D. Ohio Feb. 7, 2008)). Though unpublished and only discussed in passing, a majority of district courts within the Sixth Circuit have interpreted *Trout* to provide that an errata sheet is not a vehicle for a deponent to make substantive changes to deposition testimony.[6]

---

[6] *See Caudill Seed & Warehouse Co., Inc. v. Jarrow Formulas, Inc.*, No. 3:13-cv-82-CRS, 2019 WL 1435934, at *5 n.1 (W.D. Ky Mar. 29, 2019); *Ramirez v. Bolster& Jeffries Health Care Grp., LLC*, No. 1:12-cv-205-GNS, 2016 WL 4132294, at *3 (W.D. Ky. Aug. 3, 2016) (collecting cases); *James T. Scatuorchio Racing Stable, LLC v. Walmac Stud Mgmt., LLC*, No. 5:11-374-DCR, 2014 WL 1744848, at *3 (E.D. Ky. Apr. 30, 2014); *Clare v. Chrysler Grp., LLC*, No. 13-11225, 2014 WL 2515212, at *1 (E.D. Mich. June 4, 2014); *Walker v. 9912 E. Grand River Assocs., LP*, No. 11-12085, 2012 WL 1110005, at *3-4 (E.D. Mich. Apr. 3, 2012); *Giebel v. Lavalley*, No. 5:12-CV-750, 2013 WL 6903784, at *4-5 (N.D. Ohio Dec. 31, 2013); *Hall v. U.S. Cargo & Courier Service, LLC*, No. 2:16-CV-330, 2019 WL 2524424, at *2 (S.D. Ohio June 18, 2019); *Tchankpa v. Ascena Retail Grp., Inc.*, No. 2:16-CV-895, 2018 WL 1472527, at *1 (S.D. Ohio Mar. 26, 2018); *European Pensions Mgmt. Ltd. v. Columbus Life Ins. Co.*, No. 1:16-CV-542, 2017 WL 4540233, at *12 (S.D. Ohio Oct. 11, 2017); *Horter Inv. Mgmt., LLC v. Cutter*, No. 1:15-CV-00477, 2017 WL 1424327, at *3 (S.D. Ohio Apr. 20, 2017); *McClendon v. Hightowers Petroleum Co.*, No. 1:14-CV-00619, 2016 WL 2859625, at *2 (S.D. Ohio May 16, 2016); *Jones-McNamara v. Holzer Health Systems, Inc.*, No. 2:13-CV-616, 2015 WL 196048, at *4 (S.D. Ohio Jan. 14, 2015); *Mullins v. Cyranek*, No. 1:12-CV-384, 2014 WL 3573498, at *2 (S.D. Ohio July 21, 2014); *Lewis v. Hawkins*, No. 3:16-CV-315-TAV-HBG, 2017 U.S. Dist. LEXIS 162003, at *16 (E.D. Tenn. Sept. 28, 2017); *Dentsply Int'l v. U.S. Endodontics, LLC*, No. 2:14-CV-196, 2014 U.S. Dist. LEXIS 181352, at *4 (E.D. Tenn. Nov. 18, 2014); *CNB Bancshares, Inc. v. StoneCastle Sec. LLC*, No. 3:09-CV-33, 2012 WL 2887256, at *3 (E.D. Tenn. July 13, 2012); *Jeffries v. Emerson Indus. Automation*, No. 14-CV-2431-SHL-TMP, 2015 WL 11019142, at *1 (W.D. Tenn. Aug. 6, 2015); *Hensley v. Methodist Healthcare Memphis*, No. 13-2436-STA-CGC, 2014 WL 11514824, at *2 (W.D. Tenn. July 28, 2014); *Taylor v. W. Tenn. State Penitentiary*, No. 2:11-CV-02843-CGC, 2014 WL 2036048, at *2 (W.D. Tenn. May 16, 2014); *E.E.O.C. v. Skanska USA Building, Inc.*, 278 F.R.D. 407, 412 (W.D. Tenn. 2012). *But see Hank v. Great Lakes Constr. Co.*, No. 1:16-CV-02104, 2017 WL 10127362, at *1 n.3 (N.D. Ohio Aug. 2, 2017), *reconsideration denied*, 2017 WL 10127363 (N.D. Ohio Aug. 21, 2017); *Jermano v. Graco Children's Products, Inc.*, No. 13-CV-10610, 2015 WL 1737548, at *2 (E.D. Mich. Apr. 16, 2015).

**2. Analysis**

Simpson cited to the Kentucky Rules of Civil Procedure arguing that the changes she sought to make to her deposition in her errata sheet were proper. (DN 63, at PageID # 335.) However, the applicable Federal Rule to this case, Fed. R. Civ. P. 30(e)(1), has been interpreted to compel the opposite conclusion. In reviewing Simpson's errata sheet and comparing the same to the deposition testimony she seeks leave to correct, the Court holds that the vast majority of the approximately seventy changes Simpson attempted to make constitute improper changes under the authority cited above. (*Compare* DN 77-2, *with* DN 77-3.) For example, on numerous occasions, Simpson attempted to change her answer to a question from "yes" to "no" or vice versa or to change "I don't know" or "I don't recall" to an affirmative yes or no response. (*Compare* DN 77-2, at PageID # 1087, 1089, 1092, 1102, 1105-06. 1115, 1119, 1138, 1159, *with* DN 77-3, at PageID # 1165-69, 1172-73.) This is improper absent an allegation that the court reporter made an error. *See Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992). Simpson also attempted on a number of occasions to add a qualification after an answer. For example:

| Deposition Transcript | Requested Change | Reason |
|---|---|---|
| A.     Yes. | NO. I never received any additional student loans after the June 2005 payoff. | I did not hear the question correctly. |
| A.     No. | YES, with Defendants in September 2011. | I did not hear the question correctly |

(DN 77-2, at PageID # 1093, 1105; DN 77-3, at PageID # 1166-67.) This too is improper where Simpson did not state the qualification during the deposition. On a number of other occasions, Simpson sought to overtly change her testimony. For example,

| Deposition Transcript | Requested Change | Reason |
|---|---|---|
| A.     Yes, but it's incorrect. | I possibly made a payment in May '05 but not June '05. | I did not hear the question correctly. |

| Deposition Transcript | Requested Change | Reason |
|---|---|---|
| A. At the time, I hadn't seen the promissory note because, like I said, it took them over two – excuse me, over three years to produce the 2006 promissory note, and I have proof that I requested it many times. | Initially, I did not realize the 2006 loan had been forged because I had not seen the promissory note. I first thought it was just an error in Defendants' bookkeeping. Since first having knowledge of this loan in November 2011, I told Defendants it was not my loan. I requested the 2006 promissory note from Defendants for over 3 years before they were able to produce it. | I did not hear the question correctly. |
| A. No. Actually had typed up when I had contact with the company, the Defendants. | I hand wrote notes as I spoke to Defendants from September 2011 on but did not add these notes to the "Timeline" until after I filed this lawsuit. | I did not hear the question correctly. |
| A. There was – the department of education was on the 2008, yes. | I thought the student loan listed on my 2008 bankruptcy was an error and belonged to someone else. | I did not hear the question correctly. |
| A. committed fraud by forging my signatures to cover it | committed fraud *twice* by forging my signatures to cover it | Typographical error. |

(DN 77-2, at PageID # 1117, 1145, 1152, 1159, 1162; DN 77-3, at PageID # 1168, 1172-73.) Simpson also attempted to insert "I object to this question" into numerous responses when she did not assert the same during the deposition, sometimes disingenuously calling the omission of the same a "typographical error." (*Compare* DN 77-2, at PageID # 1123-32, *with* DN 77-3, at PageID # 1169-71.) Changes such as these are simply not permissible under the authorities cited above, especially in light of the fact that Simpson does not appear to contest that the court reporter accurately transcribed her testimony during the deposition. While the Court is not unsympathetic to Simpson's hearing difficulties, Simpson will have ample opportunity at any trial in this matter to explain why her deposition testimony was inaccurate because she misheard particular questions.

16

Indeed, the Court finds only two examples in which Simpson sought to make proper changes under Fed. R. Civ. P. 30(e)(1). She attempted to correct the spelling of her husband's name and her title at a former job from "sales training" as listed in the transcript to "sales trainee." (DN 77-3, at PageID # 1165.) Despite these changes having been sent outside the thirty day period prescribed by Rule 30(e), given Simpson's personal circumstances and her attempts to seek clarification of the deadline to respond with her errata sheet, the Court will permit those two changes. The Court will direct Simpson to prepare a new errata sheet containing only those changes as set forth below. In all other respects, the Court will deny her request for additional assistance.

### III.  ORDER

For the reasons set forth above,

IT IS HEREBY ORDERED that Simpson's Motion to Amend Complaint & Request for Additional Assistance (DNs 63, 71) is **GRANTED IN PART** and **DENIED IN PART** as follows:

(1) Simpson's request to amend her Complaint is **DENIED**.

(2) Simpson's request for additional assistance regarding her errata sheet is **GRANTED** as to her attempt to correct the spelling of her husband's name on page fourteen, line seven of her deposition and her attempt to correct her title on page twenty-seven, line nineteen of her deposition. Her request is **DENIED** as to her remaining attempted corrections.

(3) On or before March 16, 2020, Simpson shall prepare a new errata sheet containing only the two changes listed in Subsection (2) above, sign, and serve the same on Defendants to be attached to her deposition transcript. Simpson shall also serve a

copy of the instant opinion and her new errata sheet on the court reporter who transcribed her deposition.

IT IS FURTHER ORDERED that, in accordance with the Court's September 9, 2019, Order (DN 80), within fourteen days of entry of this Order, the Parties shall jointly contact the undersigned's Case Manager, Theresa Burch, via e-mail, at theresa_burch@kywd.uscourts.gov, to schedule a telephonic status conference to discuss resetting the deadlines previously held in abeyance and rescheduling the settlement conference in this matter.

Colin H Lindsay, Magistrate Judge
United States District Court

cc: Counsel of record, *Pro Se* Plaintiff

March 3, 2020

Appeal of this Order is subject to the terms and time limitations of Fed. R. Civ. P. 72(a) and L.R. 72.2.