UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

ROSE M. SIMPSON                                                                                    Plaintiff

v.                                                                         Civil Action No. 3:17-cv-76-RGJ

XEROX EDUCATION SERVICES, LLC                                                        Defendants
D/B/A ACS EDUCATION SERVICES, *ET AL*.

\* \* \* \* \*

**<u>MEMORANDUM OPINION AND ORDER</u>**

Defendants Conduent Education Services, LLC ("CES") and Conduent, Inc. ("Conduent") (together with CES, "Defendants") move for summary judgment [DE 100]. Plaintiff Rose M. Simpson ("Plaintiff") responded [DE 101] and Defendants replied [DE 102]. Plaintiff also filed a Surreply in support of her Response.[1] [DE 103]. Briefing is complete, and the matter is ripe. For the reasons below, the Court **GRANTS** Defendants' Motion for Summary Judgment [DE 100].

**I.    BACKGROUND**

CES is a student loan servicing company that was based in Utica, New York. [DE 100 at 1478]. Before 2010, CES was known as ACS Education Services, and from 2010–2017, it was called Xerox Education Services. [*Id.*]. CES claims that it was the loan servicer for Plaintiff's student loans from 2002–2005 and 2011–2014. Conduent is a publicly traded corporation and the indirect parent company of CES. [*Id.*]. The two entities maintain separate corporate identities, and Conduent claims it is not involved in the student loan business in any capacity. [*Id.*].

---

[1] Neither the Joint Local Rules for the Eastern and Western Districts of Kentucky nor the Federal Rules of Civil Procedure contemplate filings after briefing is complete. Plaintiff also failed to file a motion for leave file a surreply. Therefore, the Court will not consider Plaintiff's Surreply nor would it have affected the Court's analysis. *See Key v. Shelby Cty.*, 551 F. App'x 262, 264–65 (6th Cir. 2014).

Plaintiff attended various colleges and universities from 1992–2002 before graduating from the University of North Florida. [DE 101 at 2020]. Plaintiff financed her education with student loans. [*Id.*]. In December 2002, Plaintiff consolidated her student loans and CES began servicing the loans. [*Id.*]. Neither party disputes that Plaintiff made timely monthly payments on her student loans from December 2002 to August 2005. [DE 100 at 1479; 101 at 2020].

In August 2005, the status of Plaintiff's student loans in the National Students Loan Data System ("NSLDS") database changed from "in repayment" to "non-defaulted, paid in full through consolidated loan." [DE 100 at 1479]. Plaintiff claims that she paid her student loans in full via a personal check for $59,709.02 in June 2005 and received a payoff letter from Defendants. [DE 101 at 2020]. Defendants, however, assert that Plaintiff consolidated and refinanced her student loans in August 2005 via a Federal Direct Consolidation Loan from the United States Department of Education ("ED"). [DE 100 at 1479–80]. To confirm that it did not receive payments from Simpson in June 2005, CES represented that it exhaustively searched its records and received no payment from any source in the amount of $59,709.02 during June or July 2005. [DE 100 at 1481].

Defendants argue that Plaintiff applied to the ED for a Direct Consolidation Loan and signed a new promissory note in May 2005. [*Id.* at 1480]. On August 12, 2005, CES received a consolidation payment from the ED that did not expunge the debt but refinanced it into a new loan. [*Id.*]. The refinanced student loan was transferred to a different servicer. [*Id.*]. As a result, CES sent Plaintiff a letter reflecting that her 2002–1992 student loans had been paid off with the proceeds of her consolidation. [*Id.*]. Records from NSLDS reflect that Plaintiff consolidated her loans again in February 2006 and executed a new promissory note. [DE 100-3 at 1601, DE 100-8]. CES was not Plaintiff's loan servicer in 2006 and had no connection to her loans. [DE 100 at

1480]. Plaintiff contends that she did not sign promissory notes in 2005 and 2006 related to her student loans. [DE 101 at 2031]. Instead, she claims that Defendants forged her signature. [*Id.*].

On January 29, 2008, Plaintiff filed for Chapter 13 bankruptcy and listed her existing student loans as $50,717 and "uncontested." [DE 100 at 1481–82]. However, Plaintiff claims that she did not intend to list the student loans on her 2008 bankruptcy petition. [DE 101 at 2036–37]. Instead, she asserts that her bankruptcy counsel listed the student loans as they appeared on her credit report and she failed to thoroughly read the petition. [*Id.*]. Plaintiff voluntarily dismissed her petition several months later. [*Id.* at 2036]. On February 12, 2011, Plaintiff voluntarily filed for Chapter 7 bankruptcy. [DE 100 at 1484]. She listed her student loans as "contingent," "unliquidated," and "disputed" on her Chapter 7 bankruptcy petition and claimed that the amount was unknown. [DE 100-11 at 1739]. CES claims that although it was again Plaintiff's loan servicer by 2011, she did not provide CES notice of her bankruptcy. [DE 100 at 1484–85].

Defendants claim that on February 8, 2011, four days before Plaintiff's 2011 bankruptcy, her student loans were transferred back to CES for servicing. [DE 100 at 1485]. At this time, CES communicated with Plaintiff about repaying her loan. [*Id.*]. Plaintiff then submitted and obtained a series of employment deferments before her first payment was due to CES. [*Id.*]. Yet Plaintiff claims that she never sought deferments on her loans and that Defendants again forged her signature.[2] [DE 101 at 2027]. When her final deferment period ended, CES began sending Plaintiff billing notices, which would require repayment to begin in November 2012. [DE 100 at 1486]. Plaintiff never made any payments and the loans entered default. [*Id.*]. CES was unsuccessful in contacting Plaintiff about repayment and sent monthly billing notices until June

---

[2] In an email to Defendants dated September 20, 2011, Plaintiff stated that "[she] filed for an unemployment deferment recently because [she] could not find the letter from [Defendants'] company stating [her] loans had been paid in full." [DE 100-13 at 1771]. Plaintiff contends that this was a typo. [DE 101 at 2032].

3

2013. [*Id.*]. On January 24, 2014, CES transferred Plaintiff's loan back to the guarantor for it to conduct debt collection services. [*Id.* at 1487]. Plaintiff also disputed her student loans with credit reporting agencies in 2012 and 2013. [*Id.*].

In 2015, the Department of Treasury garnished part of a settlement with the U.S. Department of Veterans Affairs ("VA") to satisfy Plaintiff's obligations on her student loans. [DE 101 2040–41]. Plaintiff and her sister sued the VA in 2014, asserting malpractice/wrongful death claims on behalf of their deceased father who was treated at the VA hospital. [*Id.*]. After the parties settled, the Department of Treasury garnished $67,212.04 of the settlement proceeds in satisfaction of Plaintiff's loans. [*Id.*]. Although disputed by Plaintiff, Magistrate Judge Whalin upheld the Department of Treasury's offset. [DE 100-17 at 1924].

On February 8, 2017, Plaintiff sued Defendants claiming that the student debt is invalid. [DE 1]. Plaintiff alleges that Defendants violated § 1681s-2 of the Federal Consumer Rights Act ("FCRA") and § 1692e of the Fair Debt Collection Practices Act ("FDCPA"). [DE 46 at 226–27]. Defendants now move for summary judgment [DE 100].

## II.     DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants move for summary judgment on Plaintiff's FCRA and FDCPA claims. [DE 100]. Defendants argue that Plaintiff's claims are barred by the statute of limitations. [*Id.* at 1490]. Even if the claims were allowed to proceed, Defendants assert that Plaintiff's prior sworn admissions constitute a judicial admission refuting the core of her allegations. [*Id.* at 1492]. Defendants also allege various other legal grounds by which Plaintiff's claim must fail, including that Plaintiff has no basis to recover money garnished by the United States and that she lacks constitutional standing to sue for statutory damages. . [*Id.* at 1493–99]. Finally, Defendants claim

that if Plaintiff's FCRA or FDCPA claims survive summary judgment, then Conduent should be dismissed from the case. [*Id.* at 1500].

### A. Standard of Review

Summary judgment is required when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of specifying the basis for its motion and showing the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the nonmoving party must produce specific facts showing a material issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Factual differences are not considered material unless the differences are such that a reasonable jury could find for the party contesting the summary judgment motion. *Id.* at 252.

The Court must view the evidence and draw all reasonable inferences in a light most favorable to the nonmoving party. *Williams v. Int'l Paper Co.*, 227 F.3d 706, 710 (6th Cir. 2000). But the nonmoving party must do more than show some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a genuine dispute[.]" *Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 136 (6th Cir. 2014). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Liberty Lobby*, 477 U.S. at 252.

Rule 56(c)(1) requires that a "party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record, including

5

depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).

### B. Analysis

#### 1. Statute of Limitations

Defendants argue that Plaintiff's claims must fail because they fall outside the statute of limitations. [DE 100 at 1490]. As a threshold matter, the Court will first examine whether Plaintiff's causes of action under the FDCPA and the FCRA are within the statute of limitations. For reasons set forth below, the Court holds that Plaintiff's FDCPA and FCRA claims are both barred by the statute of limitations. On Defendants' motion to dismiss, Judge McKinley held that Plaintiff's claim could not be dismissed because the complaint did not necessarily reflect that Plaintiff's claims were time-barred. [DE 32]. However, the evidence now presented at this summary judgment phase reveals that Plaintiff's claims are not within the statute of limitations. Because Plaintiff's claims are time-barred, the Court will not address the merits of Plaintiff's claims or Defendants' alternative arguments.

*i. Statute of Limitations Under the FDCPA*

The FDCPA authorizes private civil actions against debt collectors who engage in certain prohibited practices. *See* 15 U.S.C. § 1692k(a). Plaintiff claims that CES "made false representations and those representations were used to attempt to collect a debt." [DE 46 at 227]. Claims under the FDCPA are subject to a one-year statute of limitations from the "date on which the violation occurs." *Id.* at 1692k(d). The Supreme Court has held that the statute of limitations on FDCPA claims "begins to run on the date on which the alleged FDCPA violation occurs, not the date on which the violation is discovered." *Rotkiske v. Klemm*, 140 S. Ct. 355, 358 (2019).

Moreover, Courts have refused to apply the continuing-violation doctrine to FDCPA claims. *See Slorp v. Lerner, Sampson & Rothfuss*, 587 F. App'x 249, 257–58 (6th Cir. 2014) ("Application of the continuing-violation doctrine to FDCPA claims would be inconsistent with the principles underlying the Supreme Court's limited endorsement of that doctrine[.]").

Defendants claim that Plaintiff's FDCPA claim could not have occurred after 2014 when CES stopped servicing Plaintiff's loan. [DE 100 at 1491]. CES's final attempt to collect from Plaintiff occurred in July 2013. [*Id.*]. Since this case was filed in 2017 [DE 1], both these dates fall outside the one-year statute of limitations. *See* 15 U.S.C. § 1692k(d).

Plaintiff contends that the statute of limitations on her FDCPA claim was tolled until it was discovered. [DE 101 at 2043]. Plaintiff asserts that she only discovered the claim after further research in 2017. [*Id.*]. Yet, Courts have expressly rejected the discovery argument to excuse an untimely filing. *See Rotkiske*, 140 S. Ct. at 358; *Everly v. Everly*, 958 F.3d 442, 460 (6th Cir. 2020) (describing the expansive approach to the discovery rule as a "bad wine of recent vintage").

Plaintiff also argues that Defendants have committed a continuing violation of the FDCPA because she has continued to dispute her debt with consumer reporting agencies. [DE 101 at 2043]. Again, Plaintiff's argument must fail because the Sixth Circuit does not apply the continuing-violation doctrine to FDCPA claims. *See Slorp*, 587 F. App'x at 257–58. The statute provides an unambiguous one-year statute of limitations for FDCPA claims. *See* 15 U.S.C. § 1692k(d).

Because CES ceased efforts to collect from Plaintiff in 2013 and stopped servicing her loan in 2014, no cause of action could have accrued under the FDCPA within the statute of limitations and Plaintiff's FDCPA claim is time barred. *See id.* Defendant's Motion for Summary Judgment [DE 100] as to Plaintiff's FDCPA claim is **GRANTED**.

> ii. *Statute of Limitations Under the FCRA*

Section 1681s-2 of the FCRA "is designed to prevent 'furnishers of information' from spreading inaccurate consumer-credit information." *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615 (6th Cir. 2012). Although the FCRA does not create a private right of action, *see* 15 U.S.C. §§ 1681n, 1681o, the Sixth Circuit has held that a consumer may bring a private action against a furnisher of information under § 1681s-2(b). *Boggio*, 696 F.3d at 615–16. The statute of limitations for claims brought under the FCRA is "the earlier of (1) 2 years after the date of discovery by the plaintiff of the violation that is the basis for such liability; or (2) 5 years after the date on which the violation that is the basis for such liability occurs." 15 U.S.C. § 1681p.

Plaintiff alleges that CES reported the disputed debt to credit reporting agencies in 2012. [DE 46 at 226]. She immediately disputed the debt with two credit reporting agencies who, in turn, notified CES of the dispute. [*Id.*]. Plaintiff has admitted that she had causes of action against Defendants going back to 2011. *See* DE 100-2 at 1528–29; 1577–78, Simpson Dep. Tr. 48:19–49:5; 244:16–245:19. However, Plaintiff argues that she did not discover her cause of action under the FCRA until 2017 when she conducted further research surrounding her cause of action. [DE 101 at 2043]. The Sixth Circuit has rejected this argument under similar facts. *See, e.g.*, *Rocheleau v. Elder Living Const., LLC*, 814 F.3d 398 (6th Cir. 2016). In *Rocheleau*, the Sixth Circuit held that the statute of limitations "begins to run when a claimant discovers the facts that give rise to a claim and not when a claimant discovers that those facts constitute a legal violation." *Id.* at 401 (quoting *Mack v. Equable Ascent Fin., L.L.C.,* 748 F.3d 663 (5th Cir. 2014)). Rocheleau filed suit under the FCRA against an entity that he alleged released his background report without his consent. *Id.* at 399–400. Rocheleau received notification that the report had been released in 2011 but did not file suit until more than two years later in 2013. *Id.* The Sixth Circuit ultimately upheld

8

the trial court's ruling that Rocheleau's FCRA claims were time-barred because he failed to sue within two years of discovering the alleged FCRA violations. *Id.*

Plaintiff discovered that CES had reported her debt to credit reporting agencies no later than 2012. [DE 46 at 226]. Therefore, the statute of limitations on Plaintiff's FCRA claim began to run no later than 2012 when she discovered the facts that gave rise to the cause of action. *Rocheleau*, 814 F.3d at 401. Plaintiff's FCRA claim is time-barred by the two-year statute of limitations because she learned of the facts in 2012 but did not file suit until 2017. *See* 15 U.S.C. § 1681p. Defendant's Motion for Summary Judgment [DE 100] as to Plaintiff's FCRA claim is **GRANTED**.

### III.  CONCLUSION

Having thus considered the parties' filings and the applicable law, and being otherwise sufficiently advised, the Court **ORDERS** that:

1. Defendant's Motion for Summary Judgment related to Plaintiff's FDCPA claim [DE 100] is **GRANTED**.

2. Defendant's Motion for Summary Judgment related to Plaintiff's FCRA claim [DE 100] is **GRANTED**.

*[Signature]*
Rebecca Grady Jennings, District Judge
United States District Court

March 24, 2022

Copies to:     Counsel of record